IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
et al.,

Plaintiffs,

GLENN GRAFF, KELLY GRAFF,
HILDRETH MADDOX and PEGGY MADDOX,

Proposed Plaintiffs-Intervenors,

v.                                                                           No. 13-0616-DRH

GATEWAY ENERGY & COKE
COMPANY, LLC, et al.,

Defendants.

## MEMORANDUM and ORDER

HERNDON, District Judge:

### I. Introduction and Background

Pending before the Court is proposed intervenors Glenn Graff, Kelly Graff, Hildreth Maddox and Peggy Maddox ("the Graffs") motion to intervene (Doc. 20). The Graffs, pursuant to Federal Rule of Civil Procedure 24, move to intervene in this action: (1) to sever the United States' and the State of Ohio's claims involving the Ohio Haverhill facility from those involving the Illinois Gateway facility and transfer the claims against the Ohio Haverhill facility to the United States District Court for the Southern District of Ohio, where the Graffs' citizen enforcement action against the Ohio facility has been pending for four years and (2) to challenge

the sufficiency of the proposed Consent Decree as a tool to cleanse the environment. Defendants oppose the motion arguing that this litigation is all but resolved and that intervention is unnecessary and would delay resolution of this matter and performance of the work resulting emissions reductions called for by the Consent Decree (Doc. 25). Further, defendants argue that allowing the proposed intervenors to intervene and seek transfer to take discovery and conduct evidentiary hearing would result in significant prejudice to the existing parties and considerable delay in implementing the relief established by the proposed consent decrees.

On June 26, 2013, the United States of America, the State of Illinois and the State of Ohio filed suit against Gateway Energy & Coke Company, LLC ("GECC"), Haverhill Coke Company, LLC ("HCC") and SunCoke Energy, Inc. ("SunCoke") for claims under the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq,* the Illinois Environmental Protection Act ("Illinois Act"), 4125 ILCS 5/1 *et seq.*, and Chapter 3745 of the Ohio Revised Code ("ORC") (Doc. 2). Plaintiffs seek injunctive relief and civil penalties against GECC, HCC and SunCoke for violations of these statutes and the implementing regulations. The claims relate to two facilities – the "Gateway Facility" in Granite City, Illinois, owned and operated by GECC and SunCoke and the "Haverhill Facility" in Franklin Furnace, Ohio, owned and operated by HCC and SunCoke. Both facilities manufacture metallurgical coke utilizing the same horizontal heat recovery coke oven technology to produce coke and employ the same air pollution control devices to minimize emissions from the

cokemaking process.

In December 2008, the Governments issued the first Notice of Violations ("NOV") for the alleged CAA violations at the Haverhill Facility. Since that time, the Governments issued numerous NOVs for Haverhill Facility and one for the Gateway Facility. Because of the similarities of the facilities and the violations, the Governments initiated negotiations with defendants in 2010 to resolve the alleged violations. Since 2010, the parties have participated in extensive negotiations, exchanged many drafts of the proposed consent decree and exchanged many documents. The proposed consent decree culminated after a years-long process of extensive fact-finding, settlement discussion, and independent agency evaluation of the potential case against each defendant. During this process, the United States had numerous telephone calls and met in person with counsel for the proposed intervenors at their request to consider any information the proposed intervenors might with to provide regarding the Haverhill facility. As the parties neared settlement, the Governments, with defendants' permission, shared a draft of the proposed consent decree with the proposed intervenors, who provided comments on October 9, 2012 and January 23, 2013. The governments carefully reviewed written comments by the proposed intervenors on the draft consent decree.

The same day the complaint was filed, the United States filed a notice of lodging of the proposed consent decree in this case that would resolve defendants' CAA liability for all alleged CAA violations, including resolution of all NOVs, and for future CAA violations associated with installation of the redundant Heat Recovery

System Generators (Doc. 3). The proposed consent decree would require: (1) the installation of process equipment to provide redundancy that will allow hot cooking gases to be routed to a pollution control device instead of vented directly to the atmosphere in the event of equipment downtime; (2) installation of a continuous emissions monitor for sulfur dioxide at one bypass vent per process unit (two at the Haverhill Facility and one at the Gateway Facility); (3) payment of a civil penalty of $1.995 million, of which 1.27 million will go to the United States, $575,000 to the State of Illinois, and $150,000 to the State of Ohio; and (4) performance of a lead hazard abatement supplemental environmental project at a cost of $255,000 at the Gateway Facility. Thereafter, the United States published that notice of lodging in the Federal Register for public comments. The proposed intervenors requested extensions of time of the comment period twice and the Governments allowed these requests; thus extending the comment period to October 3, 2013. The proposed intervenors timely filed comments. Also, the Governments received about 1800 pages of additional material from the proposed intervenors after the close of the comment period.

The proposed intervenors are Ohio residents, who own real property that neighbors the Haverhill Facility. On September 14, 2009, the proposed intervenors filed suit against SunCoke and HCC in the Southern District of Ohio, *Graff, et al. v. Haverhill North Coke Co. et al.*, 1:09-cv-0670. The complaint in the Southern District of Ohio alleges claims under the citizen suit provision of the CAA, a claim pursuant to the imminent and substantial endangerment provision of the

Resource Conservation & Recovery Act ("RCRA") and Ohio common law claims such as negligence, nuisance, trespass, ultrahazardous activity or abnormally dangerous activity and intentional infliction of emotional distress. The Ohio suit includes broader claims that extend beyond the complaint at bar.

On November 6, 2023, the proposed intervenors filed the motion to intervene (Doc. 20). Both defendants and plaintiffs filed their responses on November 25, 2013 (Docs. 25 & 26) and the proposed intervenors filed a reply on December 5, 2013 (Doc. 30). On April 10, 2014, the Court deferred ruling on the motion to intervene finding that it was premature as the Governments were still considering public comments on the proposed consent decree (Doc. 38). On August 11, 2014, plaintiffs moved to approve the proposed consent decree (Docs. 40 & 41). That same day, defendants filed a non-opposition to plaintiffs' motion to enter consent decree (Doc. 42). As the motion to intervene is ripe, the Court turns to address the merits.

## II. Applicable Standard

In considering a motion to intervene, the Court must accept as true the nonconclusory allegations of the motion. *Id.* "[C]ourts have been reluctant to interpret statutes to grant an unconditional right to intervene to private parties." *Phar-Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228, 1232 (3d Cir.1994) (construing Rule 24(a)(1) narrowly in the context of the right of private parties to intervene in bankruptcy cases under 11 U.S.C. § 1109(b)); *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.,* 762 F.2d 1283, 1286 (5th

Cir.1985) (same). "The statutes that do confer an absolute right to intervene generally confer that right upon the United States or a federal regulatory commission." *Id.* (citing C. Wright & A. Miller, *Federal Practice and Procedure,* Civil § 1906).

Federal Rule of Civil Procedure 24(a), subtitled "Intervention of Right," provides:

> On timely motion, the court must permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that the disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Here, the Court finds that intervention is not warranted under either Rule 24(a)(1) or Rule 24(a)(2). As stated in their pleadings, the proposed intervenors wish to intervene in this action seeking to sever/transfer the claims against the Haverhill facility to the Southern District of Ohio where their CAA citizen suit, which is much broader than this action, is pending. They reiterate that they do not seek intervention to prosecute a complaint in this judicial district, but instead seek to: (a) sever an improperly joined defendant and transfer that portion of the action to the Southern District of Ohio and (2) challenge the adequacy of the proposed consent decree. The Court finds that these reasons do not support intervention; but that these reasons along with others detailed below actually

support denying intervention.

First, the Court notes that defendant HCC was not improperly joined in this lawsuit. The governments' claims in this case against the Haverhill Facility and the Gateway Facility arose out of the "same transactions or occurrences" and many of the questions of law and fact are common to both facilities. Both facilities are owned and operated by affiliated companies, produce the same product, metallurgical coke, use the same heat recovery coke oven technology, and employ the same air pollution devices to minimize emissions. Also, plaintiffs have asserted similar CAA claims against the facilities and the relief imposed is the same. Moreover, defendant HCC has not argued that it was improperly joined; instead it has actively participated in this this litigation.

Pursuant to Rule 24(a)(1) of the Federal Rules of Civil Procedure, "the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute[.]" Fed.R.Civ.P. 24(a)(1). The CAA allows citizens to prosecute violations of the CAA by bringing civil actions in federal courts. 42 U.S.C. § 7604(a). However, a citizen cannot sue under this "citizen-suit provision" of the CAA if the state or federal government "has commenced or is diligently prosecuting" violations of "the standard, limitation, or order" of the CAA the citizen also wishes to enforce.1  *Id.* at § (b)(1)(B). This section of the citizen-suit provision

---

1 "(b) No action may be commenced – (B) if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right."

(the "intervention section") ensures that courts are not overburdened with citizen suits that are duplicative of ongoing governmental actions under the CAA. Although the intervention section serves to restrict citizen suits when the state or federal government has started to prosecute "any such action," the CAA grants the citizens a right to intervene in the government's case "as a matter of right." *Id.*

As to Rule 24(a)(1), the Court finds that the proposed intervenors do not have a right to intervene under Rule 24(a)(1) in that they already have a CAA suit on file in the Southern District of Ohio that is much broader than the one at bar. The complaint in the Southern District of Ohio does contain claims under the CAA but also includes claims arising under Ohio state common law based in tort which are based on different facts and different claims of relief. The intervention clause applies when the claims of the intervenors and the claims of the United States are the identical and that is not the case here. *See USA v. Dominion Energy, Inc. et al.*, 13-03086; 2014 WL1476600 *5 (C.D. Ill. April 15, 2014)( "This intervention section serves to grant certain third parties a right to intervene and yet restricts the ability of third parties to bring their own independent actions under the CAA. Various courts have simply assumed that the intervention section applies when a citizen and the government are seeking to enforce the *same* limitation, standard or order of the CAA."). The Court agrees with the reasoning set forth by District Judge Myerscough in *Dominion Energy*:

> "The Court notes that Congress chose to use the definite article 'the' in that phrase rather than 'any' or 'a.' The similarly worded citizen-suit provision of the Resource Conservation and Recovery Act ("RCRA") bars citizen suits when a federal

or state entity is enforcing compliance with "*such* permit, standard … or order." 42 U.S.C. § 6972(b)(1)(B); *see Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 494 (7th Cir. 2011)(finding that an earlier governmental action would prohibit a plaintiff's citizen suit under the RCRA 'if it sought to require compliance with the *same* requirements that the plaintiffs seek to enforce in this suit')(emphasis added). No doubt this language more clearly requires compliance with the same standard or order. However, the word 'the' is included in the intervention section of the CAA for good reason: if citizens could intervene in cases brought by the United States when alleging CAA violations different from those of United States, citizens would be barred from bringing independent actions against defendants against defendants for violations the United States chose not to prosecute."

*Id.*

Here, the proposed intervenors are seeking intervention to sever the claims of the Haverhill portion of this action and to transfer those claims to the Southern District of Ohio where its broader complaint is pending. These claims clearly differ from the allegations asserted in this lawsuit. To allow the proposed intervenors to intervene based on allegations that differ from those of the United States would essentially gut the citizen-suit provision. Thus, the Court finds the proposed intervenors do not have a statutory right to intervene under Rule 24(1).

As to Rule 24(a)(2), the Seventh Circuit has parsed this language into a four-part test, under which a party wishing to intervene of right must show (1) timeliness; (2) an interest relating to the subject matter of the main action; (3) at least potential impairment of that interest if the action is resolved without the intervenor; and (4) lack of adequate representation by existing parties. *E.g., Reid L. v. Ill. State Bd. of Educ.,* 289 F.3d 1009, 1017 (7th Cir. 2002). All these requirements must be met before intervention is allowed. *Wade v. Goldschmidt,* 673 F.2d 182, 185 n. 4 (7th Cir.1982).

Under this standard, the Court finds that the proposed intervenors cannot establish a lack of adequate representation by the existing parties. The Court finds that the record reflects that the Governments have adequately represented them in this litigation and have thoroughly considered their positions prior to and during this litigation. As stated above, even though not technically a party to this case, the proposed intervenors have been participating actively in this case as if they were parties in this litigation. They have submitted comments in November 2012 and January 2013, made comments on the proposed consent decree prior to its lodging, met and conferred with the plaintiffs about their concerns. Further, the proposed intervenors requested and received two extensions of time to submit comments after the proposed consent decree was lodged. In addition, after the public comment period expired, the proposed intervenors submitted about 1800 pages of documents to the Governments to review. In response to all the comments, the Goverments prepared a Responsive Summary that provides a detailed response to all of the substantive comments received (Doc. 41-1). The Responsive Summary included responses to comments that pertained to other potential claims that are not alleged in the complaint such as claims of trespass and intentional infliction of emotional distress as alleged in the *Graff* litigation. After an extensive review of the comments received, the Governments believed that the proposed consent decree is fair, reasonable and consistent with the CAA and in the public interest. While the Governments may have not agreed with the proposed intervenors comments or positions, it does not mean that the Governments were

not diligent in pursuing this litigation or that the Governments were not adequately representing the proposed intervenors. Thus, the proposed intervenors' interests have been addressed.

Accordingly, the Court **DENIES** the proposed intervenors' motion to intervene (Doc. 20).

**IT IS SO ORDERED.**

Signed this 7th day of November, 2014.

Digitally signed by David R. Herndon
Date: 2014.11.07 16:16:35 -06'00'

**United States District Court**