IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and The STATE OF ILLINOIS, and The STATE OF OHIO, <br><br> Plaintiffs, <br><br> v. <br><br> GATEWAY ENERGY & COKE COMPANY, LLC, <br><br> and <br><br> HAVERHILL COKE COMPANY, LLC, <br><br> and <br><br> SUNCOKE ENERGY, INC., <br><br> Defendants. | Civil Action No. 13-616-DRH-SCW |

## <u>SECOND AMENDMENT TO CONSENT DECREE</u>

WHEREAS, on June 26, 2013, the United States, on behalf of the U.S. Environmental Protection Agency; the State of Illinois ("Illinois"), on behalf of the Illinois Environmental Protection Agency; and the State of Ohio ("Ohio"), on behalf of the Ohio Environmental Protection Agency (collectively, "Plaintiffs"), filed a complaint and contemporaneously lodged a proposed Consent Decree in this action between the United States, Ohio, Illinois, and Defendants Gateway Energy & Coke Company, LLC, Haverhill Coke Company, LLC, and SunCoke Energy, Inc. (collectively, "Defendants") regarding alleged Clean Air Act violations at two Midwestern heat recovery coking facilities, one in Franklin Furnace, Ohio

("Haverhill Facility") and one in Granite City, Illinois ("Gateway Facility" or "GECC");

WHEREAS, subsequent to lodging of the proposed Consent Decree, the United States sought and received public comments regarding the Decree;

WHEREAS, the Plaintiffs carefully considered the public comments received and moved the Court to enter the proposed Consent Decree;

WHEREAS, on November 10, 2014 (the "Effective Date"), the Court entered the proposed Consent Decree;

WHEREAS, Section XVI (Modification) of the Consent Decree provides that the terms of the Consent Decree may be modified by a subsequent written agreement between the Plaintiffs and Defendants, and where a modification constitutes a material change, it must be approved by the Court;

WHEREAS, the Parties agreed to, and filed with the Court on June 5, 2015, a non-material First Amendment to Consent Decree to modify the timing for completion of the Flue Gas Flow Rate Study at Phase 1 of the Haverhill Facility ("HNCC No. 1"), and to modify the timing and work plan for completion of the Flue Gas Flow Rate Study at Phase 2 of the Haverhill Facility ("HNCC No. 2");

WHEREAS, the Parties to this Second Amendment to Consent Decree have agreed to certain material modifications to the Consent Decree, as set forth herein;

WHEREAS, the Consent Decree requires Defendants, *inter alia*, to install and operate redundant heat recovery steam generators ("HRSGs") to capture,

cool, and route to pollution control equipment flue gases and associated emissions from each Affected Coke Oven Battery at HNCC No. 1, HNCC No. 2, and the Gateway Facility during HRSG outages ("Redundant HRSG Project"), and to comply with more stringent interim and final bypass venting emissions limits for particulate matter ("PM") and sulfur dioxide ("$SO_2$");

WHEREAS, Paragraph 15 of the Consent Decree provides Defendants with 720 hours, per Bypass Vent Stack, to complete work related to the installation of the Redundant HRSGs from the time this work is started until the times specified in Paragraph 17 ("Redundant HRSG Tie-in");

WHEREAS, the number of hours for Redundant HRSG Tie-in contemplated in the Consent Decree did not include time for replating the sprayer dryer absorbers ("SDAs") at HNCC No. 1, HNCC No. 2, or GECC to upgrade the SDAs' metallurgy to make it more corrosion-resistant and assist in effective operation of the SDAs ("SDA Replating Project");

WHEREAS, Defendants have represented that operations following installation of the Redundant HRSGs have exacerbated corrosion-related issues at the SDAs;

WHEREAS, the SDAs are part of the flue gas desulfurization units ("FGDs") at HNCC No. 1, HNCC No. 2, and GECC, which, together with baghouses at each respective facility, remove $SO_2$, PM, lead ("Pb"), and HCl, among other pollutants, from the flue gas produced as a result of the coking process prior to discharge to the atmosphere through the Main Stack;

WHEREAS, Defendants have been operating the FGDs to over-control $SO_2$, PM, Pb, and, as to the Haverhill Facility, HCl emissions from the Main Stacks since the Effective Date of the Consent Decree by, among other things, injecting excess lime slurry into the SDAs at HNCC No. 1, HNCC No. 2, and GECC;

WHEREAS, Defendants have completed early commissioning and operation of the Redundant HRSG Project at HNCC No. 1 and HNCC No. 2 by completing the Redundant HRSG Project ahead of the deadline specified in the Consent Decree ("early gas sharing"), which has reduced emissions of $SO_2$ and PM beyond what is required by the Consent Decree at HNCC No. 1 and HNCC No. 2;

WHEREAS, by this Second Amendment to Consent Decree, Defendants have agreed to lower Bypass Venting emissions limits relating to $SO_2$ as set forth in amended Paragraph 17, and seek to incorporate such lower limits into federally enforceable construction permit(s) and issued Title V operating permits for the Gateway and Haverhill Facilities;

WHEREAS, Defendants represent that the SDA Replating Project is necessary to maintain and improve the mechanical integrity and reliability of the FGD systems, which in turn are required to ensure reliable and consistent operation of the Redundant HRSGs and the Existing HRSGs simultaneously, within the meaning of Paragraph 8(kk) of the Consent Decree, while HNCC No. 1, HNCC No. 2, and GECC are operating in gas sharing mode;

WHEREAS, to complete the SDA Replating Project, additional hours for Redundant HRSG Tie-In are necessary;

WHEREAS, Defendants will continue to over-control $SO_2$, PM, Pb, and, as to the Haverhill Facility, HCl to mitigate the excess emissions at GECC, HNCC No. 1, and HNCC No. 2, that occur as a result of the SDA Replating Project;

WHEREAS, as specified herein, this Second Amendment to Consent Decree increases the number of Redundant HRSG Tie-In hours for completing the SDA Replating Project, provides for the mitigation of PM, $SO_2$, Pb, and, as to the Haverhill Facility and Gateway Facility, respectively, HCl and sulfuric acid emissions that will occur during the SDA Replating Project, and proposes certain other revisions to streamline reporting obligations under the Consent Decree; and

WHEREAS, the Parties recognize, and the Court by entering this Second Amendment to Consent Decree finds, that this Second Amendment has been negotiated at arms-length and in good faith and that this Second Amendment is fair, reasonable, and in the public interest.

NOW, THEREFORE, upon the consent and agreement of the Parties in accordance with Paragraph 127 of the Consent Decree, the Consent Decree is hereby modified as follows:


<u>AMENDED CONSENT DECREE PROVISIONS</u>

1.      The Consent Decree shall remain in full force and effect in accordance with its terms, except that Paragraphs 8(kk), 15, 17, 20(j), 34, 48, 49, and 128 and Section IV.J are amended and new Paragraph 44.A and Section V.A

(Mitigation) are inserted, as set forth below, and shall become effective if entered by this Court.

2. Paragraph 8(kk) is amended to read as follows:

"Redundant HRSG Tie-In" includes the period (a) when a hot duct at an Existing HRSG is cooled for purposes of installing a Redundant HRSG to when a Redundant HRSG and the Existing HRSGs can consistently operate simultaneously, and (b) whether before or after Paragraph 17 takes effect, when Scheduled FGD Maintenance is performed to complete the SDA Replating Project.

3. Paragraph 15 is amended in part to read as follows:

For purposes of Redundant HRSG Tie-In pursuant to this Consent Decree only, Defendants shall have seven hundred and twenty (720) hours to complete such work, per Bypass Vent Stack, including all Bypass Venting through the Main Stack, plus additional time to complete the SDA Replating Project. For any period in which Defendants utilize Redundant HRSG Tie-In time, Defendants shall comply with the limits specified in the table below . . . .

4. Paragraph 17 is amended to read as follows:

Beginning on the earlier of (a) the date Defendants notify Plaintiffs that the redundant HRSGs at HNCC No. 2, HNCC No. 1, and the GECC Battery, respectively, are fully operational or (b) twenty-seven (27) months after the Effective Date at HNCC No. 2 and fifty-one (51) months after the Effective Date at HNCC No. 1 and the GECC Battery, and not including the Redundant HRSGs Tie-In time referenced in Paragraph 15, Defendants shall comply with the Bypass

Venting emission limits[1] specified in the table below at each Affected Coke Oven Battery:

| Pollu tant | Each Bypass Vent Stack (pounds/hour) | | | Main Stack Bypass Venting (pounds/hour) | | | Total Bypass Venting (tons/year[b]) | | |
|---|---|---|---|---|---|---|---|---|---|
| | HNCC No. 1 | HNCC No. 2 | GECC | HNCC No. 1 | HNCC No. 2 | GECC | HNCC No. 1 | HNCC No. 2 | GECC |
| $SO_2$ | 323[c] | 323[c] | 323[c] | 1615[c] | 1615[c] | 1938[c] | 260.4 | 260.4 | 312.6 |
| | 420[d] | 420[d] | --- | 2100[d] | 2100[d] | --- | | | |
| PM | 34.3[a] | 34.3[a] | 34.3[a] | 171.5[a] | 171.5[a] | 205.8[a] | 28.8 | 28.8 | 34.6 |
| Pb | --- | --- | 0.186[a] | --- | --- | 1.116[a] | --- | --- | 0.188 |

Table Notes:
a. Compliance shall be determined in accordance with Section IV.F (Quantification of Emissions During Bypass Venting).  The emissions limits relating to PM include both filterable and condensable emissions.
b. Rolling 24-month total.
c. For any Bypass Venting Incident lasting 48 consecutive hours or longer, compliance shall be determined as a rolling 48-hour average, for each such Bypass Venting Incident.  For any Bypass Venting Incident lasting less than 48 consecutive hours, this limit shall not apply.
d. Based on a 3-hour block average.

5. Paragraph 20(j) is amended to read as follows:

To the extent that completion of the implementation of corrective action(s), if any, is not finalized at the time of the submission of the report required under this Paragraph, the status of the corrective action(s) will be reported in subsequent semi-annual reports until the corrective action(s) has been completed.

6. The last sentence of Paragraph 34 is amended as follows:

---

[1] Nothing in Paragraph 17 of this Consent Decree shall eliminate Defendants' obligations to comply with the existing requirements of Defendants' relevant permits.

Defendants shall use best efforts to maintain and operate a CEMS at each Affected Coke Oven Battery in accordance with Paragraph 35 below, until emissions mitigation has been completed at the Haverhill Facility and Gateway Facility, respectively, in accordance with Section V.A (Mitigation).

7. A new Paragraph 44.A is added as follows:

Within ninety (90) Days of the date the Second Amendment is entered by the Court, Defendants shall seek to incorporate the amended emissions limitations established in Paragraph 17 into its federally enforceable construction permit(s) and issued Title V operating permits for the Haverhill and Gateway Facilities in accordance with Paragraphs 42 through 44.

8. Paragraph 48 of Section IV.J (Reporting Requirements) is amended in part to add the following subparagraph (m):

m. Excess emissions reports ("EERs") for each $SO_2$ CEMS required pursuant to Paragraph 34 of the Consent Decree. The EER shall (i) document the date, commencement and completion times, duration and magnitude of each exceedance recorded by the CEMS, the reason (if known) and the corrective actions taken (if any) for each exceedance; (ii) document the date, time, and duration of each malfunction of the CEMS and/or emission unit and the date, time, and duration of any downtime of the CEMS while the emission unit was in operation along with the reason (if known) and the corrective actions taken (if any); and (iii) report emissions in units of the applicable standard(s). For the

CEMS at the Haverhill Facility, the EERs shall be compiled on a quarterly basis, but submitted on a semi-annual basis in the semi-annual report.

Section IV.J (Reporting Requirements) is also amended to include the following additional Paragraph 48.A:

Paragraph 48.A. Defendants shall include in the first semi-annual progress report due on the first January 31 or July 31 that occurs more than thirty (30) Days after completion of each SDA Replating Project at HNCC No. 1, HNCC No. 2, and GECC, (a) the number of Bypass Venting hours resulting from the SDA Replating Project beyond 720 hours per Bypass Vent Stack, (b) the quantity of excess PM, $SO_2$, Pb, and, as to the Haverhill Facility and Gateway Facility, respectively, HCl and sulfuric acid emissions resulting from the SDA Replating Project, and (c) the amount of emissions mitigation achieved (1) from the Effective Date of the Consent Decree through the first semi-annual report submitted after completion of the SDA Replating Project as to emissions reductions resulting from early gas sharing, and (2) from July 1, 2017 through each semi-annual report submitted after completion of the SDA Replating Project as to other qualifying emissions reductions under Section V.A (Mitigation). Defendants shall also include in each semi-annual progress report submitted after completion of the SDA Replating Project and until the emissions mitigation required in Section V.A is complete, a calculation of the PM, $SO_2$, Pb, and for the Haverhill Facility and Gateway Facility, respectively, HCl and sulfuric acid emissions reductions achieved below the applicable Consent Decree limits (for Bypass Vents) or Permit

limits (for the Main Stack) during that period, along with the additional information required by Paragraph 48 of the Consent Decree.

9.      Paragraph 49 is amended in part to read as follows:

If Defendants have reason to believe that they have violated or may violate any requirement of this Consent Decree for which notice is not provided in Paragraph 48a.-m. above, for which a RCFA is not required pursuant to Section IV.D (Root Cause Failure Analysis for Bypass Venting Incidents), or for which notice is not provided in the semi-annual or annual compliance certifications or quarterly or semi-annual deviation reports that are submitted to the State of Illinois or the State of Ohio pursuant to the CAA and attached to the semi-annual progress reports submitted pursuant to Paragraph 48 and Section XIII (Notices), Defendants shall notify the United States, the State of Illinois, and the State of Ohio of such violation or potential violation of this Consent Decree and its duration or anticipated likely duration, in writing, within forty-five (45) Days of the Day Defendants first become aware of the violation or likely violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. . . .

10.     The Consent Decree is revised to include the following additional section after Section V (Civil Penalty) and before Section VI (Federal-Only Supplemental Environmental Project) under the Consent Decree:

Section V.A. **MITIGATION**

65A.     Defendants shall mitigate the excess emissions resulting from the SDA Replating Project as follows:  Defendants shall reduce emissions by 1.15 times the amount of emissions calculated pursuant to Paragraph 65B. Defendants shall calculate emissions from the SDA Replating Project in accordance with this Section V.A (Mitigation).  In calculating emissions mitigation, Defendants may include emissions reductions resulting from early gas sharing at HNCC No. 1 and HNCC No. 2.  Defendants shall calculate progress towards such mitigation collectively for HNCC No. 1 and HNCC No. 2 and separately for GECC by (1) taking 1.15 times the result of the formula in Paragraph 65B, and (2) collectively for HNCC No. 1 and HNCC No. 2 and separately for GECC, subtracting the sum of results of the formulas in Paragraphs 65C and 65D.  For each additional ton of $PM_{2.5}$ reduced beyond the amount already incorporated in mitigating the total excess PM emissions as calculated in Paragraph 65B, Defendants may receive one ton of $SO_2$ or sulfuric acid mitigation credit as calculated in Paragraph 65C.

65B.     Defendants shall calculate the total excess $SO_2$, PM, Pb, and, as to the Gateway Facility and Haverhill Facility, respectively, sulfuric acid and HCl emissions that will occur as a result of the SDA Replating Project, that have been or will be mitigated, using the following formula:

$$C_{PM} = \sum_{i}^{BPS} D_i P_{PM\ Bypass} - D \times P_{PM\ Main}$$

$$C_{SO_2} = \sum_{i}^{BPS} D_i P_{SO_2\ Bypass} - D \times P_{SO_2\ Main}$$

$$C_{Pb} = \sum_{i}^{BPS} D_i P_{Pb\ Bypass} - D \times P_{Pb\ Main}$$

$$C_{Sulfuric\ Acid} = \sum_{i}^{BPS} D_i(P_{Sulfuric\ Acid\ Bypass} - R_{Bypass} \times P_{PM\ Bypass}) - D \times P_{Sulfuric\ Acid\ Main}$$

$$C_{HCl} = \sum_{i}^{BPS} D_i P_{HCl\ Bypass} - D \times P_{HCl\ Main}$$

The Variables used in the Equation in this Paragraph shall have the following meanings:

$C_{PM}$ = total excess emissions of PM

$C_{SO_2}$ = total excess emissions of $SO_2$

$C_{Pb}$ = total excess emissions of Pb

$C_{Sulfuric\ Acid}$ = total excess emissions of Sulfuric Acid (Gateway Facility only)

$C_{HCl}$ = total excess emissions of HCl (Haverhill Facility only)

$P_{PM\ Bypass}$ = mass flow rate of PM from most recent, representative stack test conducted during Bypass Venting

$P_{PM\ Main}$ = mass flow rate of PM from most recent, representative stack test conducted at the Main Stack

$P_{SO_2\ Bypass}$ = mass flow rate of $SO_2$ defined as the Avg CEMs Concentration over period of Bypass Venting multiplied by Flue Gas Flow Rate from most representative Flue Gas Flow Rate study

$P_{SO_2\ Main}$ = Avg $SO_2$ mass flow rate in lbs/hr as measured by the Main Stack CEMs

$P_{Pb\ Bypass}$ = mass flow rate of Pb from most recent, representative stack test conducted during Bypass Venting

$P_{Pb\ Main}$ = mass flow rate of Pb from most recent, representative stack test conducted at the Main Stack

$P_{Sulfuric\ Acid\ Bypass}$ = mass flow rate of Sulfuric Acid from most recent, representative stack test conducted during Bypass Venting

$P_{Sulfuric\ Acid\ Main}$ = mass flow rate of Sulfuric Acid from most recent, representative stack test conducted at the Main Stack

$P_{HCl\ Bypass}$ = mass flow rate of HCl from most recent, representative stack test conducted during Bypass Venting

$P_{HCl\ Main}$ = mass flow rate of HCl from most recent, representative stack test conducted at the Main Stack

$D_i$ = duration of Bypass Venting on Bypass Vent Stack $i$

$D$ = total duration of Bypass Venting beyond the seven hundred twenty (720) hours provided in Paragraph 15, including when emissions are routed to any Bypass Venting Stack

$BPS$ = Bypass Vent Stacks open during Bypass Venting, where $i$ equals each individual open Bypass Vent Stack

$i$ = Bypass Vent Stack $i$ beyond the seven hundred twenty (720) hours provided in Paragraph 15

$R\ Bypass$ = Fraction of PM that is $PM_{2.5}$ as measured by the most recent, representative stack test conducted during Bypass Venting

65C.     Defendants shall calculate the total emissions mitigated by over-controlling at the Main Stack starting from July 1, 2017, on a semi-annual basis, using the following formula:

$$M_{PM} = PM\ Limit_{Semi-annual} - \frac{P_{PM\ Main} \times H}{2000}$$

$$M_S = \left[ SO_2\ Limit_{Semi-annual} - \frac{P_{SO_2\ Main} \times H}{2000} \right] + M_{PM_{2.5}}$$

$$M_{PM_{2.5}} = M_{PM} \times R_{Main}$$

- 13 -

$$M_{Pb} = Pb\ Limit_{Semi-annual} - \frac{P_{Pb\ Main} \times H}{2000}$$

$$M_{HCl} = HCl\ Limit_{Semi-annual} - \frac{P_{HCl\ Main} \times H}{2000}$$

The Variables used in the Equation in this Paragraph shall have the following meanings:

$M_{PM}$ = Total tons PM mitigated on a semi-annual basis

$M_S$ = Total tons $SO_2$ or Sulfuric Acid mitigated on a semi-annual basis

$M_{PM_{2.5}}$ = Total tons $SO_2$ or Sulfuric Acid mitigated by mitigation of $PM_{2.5}$ on a semi-annual basis. This shall apply only after all excess PM has been mitigated for the Gateway or Haverhill Facility, as applicable

$M_{Pb}$ = Total tons Pb mitigated on a semi-annual basis

$M_{HCl}$ = Total tons HCl mitigated on a semi-annual basis

$PM\ Limit_{Semi-annual}$ = Main Stack PM emission limit (tons), based on a six (6) month semi-annual period

$SO_2\ Limit_{Semi-annual}$ = Main Stack $SO_2$ emission limit (tons), based on a six (6) month semi-annual period

$HCl\ Limit_{Semi-annual}$ = Main Stack HCl emission limit (tons), based on a six (6) month semi-annual period

$Pb\ Limit_{Semi-annual}$ = Main Stack Pb emission limit (tons), based on a six (6) month semi-annual period

$R_{Main}$ = Fraction of PM that is $PM_{2.5}$ as measured by the most recent, representative stack test conducted at the Main Stack

$P_{PM\ Main}$ = mass flow rate in lbs/hr of PM from most recent, representative stack test conducted at the Main Stack

$P_{SO_2\ Main}$ = Avg $SO_2$ mass flow rate in lbs/hr as measured by the Main Stack CEMs

$P_{Pb\ Main}$ = mass flow rate in lbs/hr of Pb from most recent, representative stack test conducted at the Main Stack

$P_{HCl\ Main}$ = mass flow rate in lbs/hr of HCl from most recent, representative stack test conducted at the Main Stack

$H$ = Semi-annual operating hours of FGD

65D.  Defendants shall calculate the total Bypass Venting emissions mitigated as a result of early gas sharing operation as follows:

i.  Defendants shall calculate the total Bypass Venting emissions mitigated as a result of early gas sharing operation at HNCC as a sum of HNCC No. 1 and HNCC No. 2, using the following formulas:

$$M_{PM\ total} = M_{PM\ HH1} + M_{PM\ HH2}$$

$$M_{SO_2\ total} = M_{SO_2\ HH1} + M_{SO_2\ HH2}$$

$$M_{PM\ HH1} = PM\ Limit_{CD} - \sum_{i}^{BPS} D_{iHH1}P_{PM}$$

$$M_{SO_2\ HH1} = SO_2\ Limit_{CD} - \sum_{i}^{BPS} D_{iHH1}P_{SO_2}$$

The Variables used in the Equations in this Paragraph shall have the following meanings:

$M_{PM\ HH2}$ = 14.9 tons of PM

$M_{SO_2\ HH2}$ = 224.1 tons of $SO_2$

$M_{PM\ HH1}$ = Total PM emissions below the Consent Decree Bypass Venting emission limits due to early gas sharing at HNCC No. 1

$M_{SO_2\ HH1}$ = Total $SO_2$ emissions below the Consent Decree Bypass Venting emission limits due to early gas sharing at HNCC No. 1

$M_{PM\ total}$ = Total PM emissions mitigation at HNCC No. 1 and HNCC No. 2 due to early gas sharing operations

$M_{SO_2\ total}$ = Total $SO_2$ emissions mitigation at HNCC No. 1 and HNCC No. 2 due to early gas sharing operations

$D_{iHH1}$ = duration of HNCC No. 1 Bypass Venting on Bypass Vent Stack $i$ over the 27 month period from November 1, 2016 through January 31, 2019

$BPS$ = Bypass Vent Stacks open during Bypass Venting at HNCC No. 1 where $i$ equals each individual open Bypass Vent Stack

$PM\ Limit_{CD}$ = The total allowed PM Bypass Venting emissions of 37.1 tons under Consent Decree over the 27 month period from November 1, 2016 through January 31, 2019

$SO_2\ Limit_{CD}$ = The total allowed $SO_2$ Bypass Venting emissions of 349.0 tons under Consent Decree over the 27 month period from November 1, 2016 through January 31, 2019

$P_{SO_2}$ = mass flow rate of $SO_2$ as determined by the Avg CEMs Concentration over period of Bypass Venting multiplied by Flue Gas Flow Rate from most representative Flue Gas Flow Rate Study

$P_{PM}$ = mass flow rate of PM from most recent, representative stack test conducted at a Bypass Vent Stack

65E.    The quantity of pollutants emitted shall be rounded to one decimal point, as specified in Paragraph 27 of the Consent Decree.

65F.    Any disputes under the provisions of this Section shall be resolved in accordance with Section IX (Dispute Resolution) of this Consent Decree.

11.    Paragraph 128 is amended in part to read as follows:

This Consent Decree shall be subject to termination upon motion by the United States or Defendants under the conditions identified in this Section XVII (Termination).  Defendants may seek termination of this Consent Decree for any one of the Facilities upon either (1) completion and satisfaction at the Facility of

all of the following requirements of this Paragraph, or (2) any time after the permanent shutdown of, and relinquishment of all operating permits for, such Facility, provided that Defendants have complied with the requirements of this subparagraph (f) below of this Paragraph.

. . .

f. Completion of the mitigation of the excess emissions that occur as a result of the SDA Replating Project at HNCC No. 1, HNCC No. 2, and GECC.

12. This Second Amendment shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Second Amendment disclose facts or considerations indicating that the Second Amendment is inappropriate, improper, or inadequate. Defendants consent to entry of this Second Amendment without further notice. Defendants agree not to oppose entry of this Second Amendment by the Court or challenge any provision of the Second Amendment, unless the United States has notified Defendants in writing that it no longer supports entry of the Second Amendment.

Judge Herndon
2018.07.09 18:02:09 -05'00'

UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF ILLINOIS

FOR THE UNITED STATES:

THOMAS A. MARIANI, JR.
Section Chief
Environment & Natural Resources Division
United States Department of Justice

*Catherine Banerjee Rojko*

CATHERINE BANERJEE ROJKO
Senior Counsel
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Phone: (202) 514-5315
Fax: (202) 616-6584
Email: Cathy.Rojko@usdoj.gov


DONALD S. BOYCE
United States Attorney

NATHAN D. STUMP
Assistant United States Attorney
United States Attorney's Office
Nine Executive Drive
Fairview Heights, IL 62208-1344
Phone: (618) 628-3700
Fax: (618) 628-3730
Email: Nathan.Stump@usdoj.gov

FOR THE STATE OF ILLINOIS:

PEOPLE OF THE STATE OF ILLINOIS
ex rel. LISA MADIGAN,
Attorney General of the
State of Illinois

MATTHEW J. DUNN, Chief
Environmental Enforcement/
Asbestos Litigation Division

ELIZABETH A. WALLACE, Chief
Environmental Bureau/Chicago
69 W. Washington Street, 18th Floor
Chicago, IL 60602
Phone: (312) 814-3496
Fax: (312) 814-2347
Email: EWallace@atg.state.il.us

FOR THE STATE OF OHIO:

MICHAEL DEWINE
Ohio Attorney General

ELIZABETH EWING
AARON FARMER
Assistant Attorneys General
Environmental Enforcement Section
30 E. Broad St., 25th Floor
Columbus, Ohio 43215-2766
Phone: (614) 466-2766
Fax: (614) 644-1926
Email:
Elizabeth.Ewing@ohioattorneygeneral.gov
Aaron.Farmer@ohioattorneygeneral.gov

FOR GATEWAY ENERGY & COKE
COMPANY, LLC; HAVERHILL COKE
COMPANY, LLC, and SUNCOKE ENERGY,
INC.:

ROBERT BRAGER
Beveridge & Diamond PC
201 N. Charles St. Suite 2210
Baltimore, Md. 21201
Phone: (410) 230-1310
Fax: (410) 230-1389
Email: RBrager@bdlaw.com